Into Navas de Mexico versus Andromeda Steamship Corporation. Good morning, folks. Good morning, Michael Doan on behalf of Appellants. May it please the Court. The District Court's reading of the contract at issue in this case strained its language beyond the reasonable and ordinary meaning. Reviewing the intent as expressed in the language of the contract, Part 1 of the agreement states that in the event there is any conflict between Part 1 and Part 2, Part 1 trumps any inconsistencies found in Part 2. Therefore, it is clear from the contract that the Part 1 controls over Part 2. This provision clearly gives priority over anything found in Part 2 of the contract. And this was something that the parties specifically What significance, if any, should the judge have drawn from the fact that 19d said if Box 25 in Part 1 is not filled in, subclause A of this clause shall apply, then there was a line put through that and there was a line put through C and but the asterisk is still there and you've got the writing in Box 25. Whatever it was, it was not a model of clarity what the parties were getting at, was it? Well, if you look at Part 2 by itself, maybe. But the parties in their negotiations of this contract anticipated that there may potentially be inconsistencies between Part 1 and Part 2. And that is why That's in the boilerplate language. Correct. But the reason I raise it is yet what's interesting about this is when you get to Part 2, 19a, they put a line through. That would have been London. Correct. 19b, they don't put a line through. That's New York suggesting, if you look just at that, that the parties had the intention to arbitrate the dispute in New York City. And then if I go to paragraph 25, they cite London and English law. Wasn't there a clear conflict? I believe, Your Honor, there would be a clear conflict if it was not for the provision in Part 1 that says, in the event there's any inconsistency, Part 1 controls over Part 2. And we could also rely on the fact that, like you said, Your Honor, that's mere boilerplate. It is clear the parties typed into the Part 1 agreement that where they wanted to arbitrate was in London under English law. That was inserted specifically into that box, indicating the parties, that's what they had negotiated for, and that's what their intent was. It's clearly marked on box 25. The court, the decision that the court, the district court, relied on. The language you're talking about is the language at the very end, just above the signature block. Correct. The language that said, in the case of a conflict, the provisions of Part 1 prevail over the provisions in Part 2. That's correct, Your Honor. I have to say, I have a copy of it, and boy, it's tiny print. Was it me, or did the original document, was it clearer than this one? I know it's cited. I'm not saying you can't read it, but I have to tell you, you need to go like that to be able to read it, at least I do. Let me just rephrase that. There's a clearer copy, and I think it was 29.1 of the record. There I think when it was scanned, there was some issue with the way it was uploaded, but I think that one gives you a better understanding of the size of the font. I believe the parties were referring to ECF number 18, where the contract could be found. I believe 29.1, which was attached to one of the pleadings addressing the contract, there you can tell that the font was, in fact, a little bit larger than what's depicted in 18. Also, it's somewhat prominent because it's right above where the parties were signing. This was not something that was buried somewhere in the contract. The way my document prints out, and I don't know if this is how the actual document looks, where they sign, that's the only thing on that page, but it may just be how it printed off the docket sheet, that that's the only thing on that page, or maybe that was at the bottom of a whole page of text. Are you following what I'm asking? Yes. From what I've seen, that signature page is a standalone, so that would have been either page two, directly behind one of the contracts. I have it as it printed out. It's a standalone page before the signature lines, and that is what it says, but it is in very small print, but it is, the only thing on that page, is that how the original looked? That's how I've seen it, Your Honor. It's like that. I think that's the version that can be found in ECF 1-8. The copy I have that I'm looking at right now in 29-1, it appears to be larger than that. It says document 1-8, page six of six. Correct. The way it was uploaded in 29-1, it's page two of six, and it's directly behind part one, which would make more sense because it's part one of that contract, as is explained in the briefs, is the actual part the parties fill out, as opposed to part two, which contains all the mere boilerplate regarding the charter party agreement. This, in our brief, Your Honor, one of the cases that supports this interpretation of the contract, that part one, this particular clause, clarifies any ambiguity and maintains that part one should trump any inconsistencies that may be found in part two, is the standard tallow corp and kill management decision at 901 F SUP 147, Southern District of New York, 1995, which is cited on page 13 of our initial brief. The court similarly found that in reviewing the contract, which also contained two parts, part one and part two, there were some inconsistencies in part two. The court there found, given the fact that in part one, the parties had inserted this provision that in the event there was any inconsistencies between the two, part one should prevail, that the parties had negotiated for that, had anticipated that there would be inconsistencies in part two, and that therefore, whatever was placed in part one should control. The court agreed with that rationale and enforced the terms in part one, which was similar to this, it was arbitration in London. There's no question that our job is to figure out by looking at the contract what the parties intended, that is to say, where they specifically wanted to arbitrate the dispute. In the process of doing that, what if anything are we supposed to infer from the fact that they crossed out 19A, which provided for London, and didn't cross out New York? Your Honor, I would say ... Just help me understand what these folks ... They were free to designate. They could arbitrate in New York or London or Zurich or Hong Kong. That was their choice. Correct. Our job is simply to say, what did they want? What was their intent? Your Honor, I ... The only thing I can say to that, Your Honor, is that given what's in the record right now, is that part one was specifically what was negotiated. If you look at part one, you actually have to enter terms in there. Yeah. I think that's a powerful argument, and I'm not disputing that. I'm just trying to understand, though. Then they went ahead and chose to cross out 19A and 19C and D, and left 19B and the two asterisks without crossing them out. It didn't make sense to me, and I don't know how I couldn't ... I mean, you may be right that the primacy is part one, period. Correct. There's a square ... I mean, it just didn't make sense why you would strike London from A, leave New York in B, and then write London in in part one under box 25. I could tell you what happened there, Your Honor, but that would be outside the record. I can't ... But just from the interpretation, it would be nothing to help me other than that they had a fallback or default position here in the face of conflict. That's correct. So, it is clear that our position is that the London clause controls, and any reading to the contrary would not be inequitable. There's one thing that's clear, Your Honor, is that the parties never bargained for arbitration taking place in Miami, Florida. Let's suppose the contract did not contain language that you have cited to us. It's the conflict resolution language that the parties adopted. Suppose you didn't have that, and all you had was ... everything else you had was the same. You had box 25 filled out, London, English law, and then you had 19A striking London, 19B leaving New York in place. Then there would have been no way, possibly, to discern the meaning of the parties. In which case, the trial judge would be correct, would he not, that the only place he could compel arbitration would have been Miami. The only analysis left at that point, Your Honor, would have been the analysis that type burden provisions control over boilerplate, but we would not be in the position which we are now, which there is this provision, and it would be a lot more difficult for the All I'm getting at is if there really was no way to reconcile a square conflict as to the site for arbitration, the only thing the court could do would to come up with the default position and select Miami because he didn't have the power to send the parties anywhere else, right? Correct. If under the scenario that you present, Your Honor, minus that clause which cured any inconsistencies between Part 1 and Part 2, it would have been a lot more difficult for the court to find any other result than Miami, Florida, but that's all we have here. Thank you very much. Thank you, Your Honor. And you have reserved three minutes for your rebuttal. That's correct. Thank you. Good morning. Good morning. May it please the court, Stephanie Wiley, on behalf of the Appalee Internaves de Mexico. I think it's important for the court to recognize the very narrow issue presented by this case. There is without question this case is headed towards arbitration, and as counsel just indicated and is included within the briefs, if in fact it is determined that the district court properly found ambiguities in the contract, then the only remedy available for the district court was to compel arbitration within its district. It's constrained by jurisdictional power pursuant to the convention. So the sole issue is whether there was an ambiguity or ambiguities within the charter party. Your Honor indicated, and I think you're being quite generous, this was not a model of clarity, absolutely. In fact, this charter party was riddled with contradictions to the point that it precludes the court from determining the party's intent. The supremacy clause, if you want to call it that, that appears immediately above the signature page doesn't save the appellate's argument, because even if we look exclusively at part one, there is still inconsistencies and contradictions. In box 25, they're designating for London and English law to apply in the event of a dispute arising under the charter party. In box 22, they're designating New York law to preside over an instance of general average. General average is when cargo gets lost and there's an allocation of risk between the charters. So if, in fact, there's cargo lost and a general average situation arises in which New York law would apply under part one, then you would also, to be sure, have a dispute arising under the charter parties whereby the charters asked for the safe passage of their cargo. So you would have a situation in which you're going to have a dispute under the charter party as well as general average. So you're, the part one is riddled with contradiction in that it's invoking in that scenario both English law as well as New York law. Help me understand it. I'm not clear that I understand the meaning of box 22. It simply, it doesn't say law, box 25 says law and arbitration is supposed to place in there, write in the site for the arbitration. They write in or they type in London arbitration, English law. 22 doesn't ask what the law would be or where it would be cited. It simply says general average to be adjusted at clause 12 and then clause 12 lists the ship. It was an electric transformer with a certain weight and drums and pallets and so on. What does 22 mean? It doesn't say law. It doesn't say location. Well, when it says clause two, I'm sorry, clause 12 in box 22, it's not referring to box 12. It's referring to clause 12 of part two of the contract. General average in new Jason clause. Exactly. In that situation, what you have is a designation of what general average law will apply in the event of a general average situation arising. You have the inconsistency on part one alone of a situation in which it's designating two the claim. But they have not have agreed to cite the arbitration in London and say this provision of the general average as stated in box 22 would apply? Couldn't they agree to do that? Or have I misunderstood? Well, they asked for English law to apply. It says London dash English law. But as to the issue of the general average. Correct. But then you'd have. There would be a variety of other issues that English law would apply to. And English law has. How do you pick the arbitrators? How many? One picks one, the second picks the other, and then together they pick the third. How many days you have to do this? Whether you can take an appeal or not in London, you can. And it's much more substantive in its appellate remedy in London than it would be, say, in England. Could they not designate general average and still want this case arbitrated in London? I'm just trying to see if there's some way we can give meaning and harmony to what they've said here. If we can't, then we're stuck with what Judge Middlebrooks did. Right. And that's our position. Because I don't think you can reconcile the application. Doesn't just say in London, it says English law. And so if you're going to. So you agree as a matter of contract interpretation, part one dominates. If there's a conflict between one and two, they're obliged to accept one. I would not stipulate to that. As opposed to one itself is inherently ridden with conflict, too. We assert both. Are you saying both are? You're making both arguments? Both arguments. Because in the contractual principle of the affirmative acts being the most indicative of the party's intent, then the striking out of the provisions of 19A, which strikes out London, that's an affirmative act, the parties did. They also struck out 19C, which gave box 25 its effect. That's just another way of saying there's a conflict. But if the parties have agreed to a method by which to resolve a conflict, in the event of a conflict, the provisions of part one shall prevail over those of part two, wouldn't we normally give effect to their mechanism of resolving a conflict? If part one were crystal clear. Okay. Well, that's a different point. But I'm simply saying in the absence of what you had in box 22, you would have to concede, would you not? That they'd have to give effect, the court would have to give effect to London? Well, I think there's a question because 19C strikes out. I accept that there's a conflict between what appears in part two and in part one. Part two evinces New York, not London. Part one doesn't evince. It says with clarity because they wrote it in London, not New York. That's a conflict. But they've given me a method by which to address and resolve any conflict. And they say part one prevails over two. Why wouldn't I just follow what they told me? Independent of you say part one is riddled with its own conflict. Well, I think it comes back to the contractual issue of the boilerplate versus the affirmative act. So I think that the boilerplate language of the part one prevails over part two is superseded by the party's affirmative fact eliminating paragraph C, which nullifies box 24. That's not what the parties say. The parties say if you've got a conflict in one or more of the conditions, what you find in part one is what governs over what you find in part two. I don't know how you get around that other than to say part one itself is internally inconsistent. But that's not what the district judge said, was it? Or that by striking out 19C, box 25 has no effect. Let me ask you this. When I was looking at 19, it was kind of interesting. They knocked out A. They knocked out C. And they put a line through D. But they didn't put a line through either of the two asterisks. And I want to focus you on asterisk, the first one. It reads A, B, and C are alternatives. Indicate the alternative agreed in box 25. And lo and behold, when I go to box 25, they indicated what they wanted. They told me in writing they wanted London. Doesn't that further suggest that the parties intended London? But it says A, B, and C are alternatives. And they chose B by not striking it out. They struck out A. They struck out C. But they left B, indicating the intent was we want New York law. If they had stricken out B, then I would agree with you. But they didn't strike out B. They left New York in. And in fact, New York designation with B is consistent with the general average designation in box 22. I think... It's a matter of contract law itself, beyond the terms of this contract. Is it not clearly the law, the binding law here, that when two contract terms conflict, the specific term controls over the general, just as a matter of normal contractual interpretation? I'd agree with you, Judge, yes. Isn't the specific London and the general is just leaving the boilerplate language New York? I think the specific would also include the affirmative act of striking out particular provisions and they struck out A and C with the apparent intent of designating B, which is New York. Let me ask just one final question that would help me. The district judge never referenced a conflict in part one itself, did he? That wasn't what he went off on. I don't think he focused on that. Did you argue that before him? Did you make the argument to the judge that part one in itself is riddled with conflict and that even if part one prevailed, you couldn't tell looking at part one because box 22 and box 25 collide? I don't recall that from the record, Your Honor. Is that the argument you made here? Yes. Okay. In part. Generally speaking, I think this contract is riddled with such contradictions all over the place that the district court properly determined that the party's intent could not be determined. I have a question about general average and you started to explain it somehow if the cargo is lost after the shipment begins. Is that what general average? Yes. But general average contemplates that the cargo has been picked up and it's in the process of being shipped. Is that correct? Typically, yes. Okay. I thought, and this is why I'm asking the question because I might be wrong, I thought the claim here was they paid for the shipment but the cargo was never picked up at all. You're correct, Your Honor. So the transformer was never picked up. Correct. So the claim here, I know you say, well, it's general average and then that's part of the charter. But I thought the charter claim here was that they never picked up the transformer to begin with. So that general average provision and what law we apply in determining general average because I think it's a choice of law, not a forum selection, but that's beside the point, is not really in this case. Have I misapprehended that? No. You're correct, Your Honor. Okay. That's what I meant. The internal inconsistencies in part one that you're now arguing here, it's about something that has nothing to do with this case. That is, that clause of the contract will have no application to the particular claim here. Correct. You have to concede that. Yes. This is not a general average case. Right. The reason why I mention it is to determine because the exercise here is . . . I understand why you want to say whether part one controls, but part one has some inconsistencies and you look at that with part two. I got the theory it's riddled with inconsistencies from the district court. I promise you I got that part. Yes, Your Honor. And I appreciate your candid answers about general average. I thought I understood it, but I want to be sure. Yes, Your Honor. You're correct. It's about relevant as to the party's intent when the contract is . . . Right. But not in reality that that clause is going to have any application. It's not invoked here. Yes. Okay. Why would they have done that? It's sort of perplexing. Why would they have put in New York law to calculate general averages should that issue have transpired and yet designate English law in box 25? I don't think that makes sense. I don't know. And I think I just wanted to add and highlight that the district court also offered the parties the opportunity to reach an agreement as to where the arbitration would take place. The parties were unable to reach an agreement, which I think adds further support for the notion . . . One of you wanted New York and one of you wanted London? Obviously neither of you wanted Miami, right? Right. If I can tell anything, that's pretty clear. Yes. I think. Correct, Your Honor. So . . . Not bad in the winter. Very much so. So I think that adds further fodder to the . . . there was no meeting of the minds as to the location of arbitration and in fact, in the event that became needed. So we respectfully request this honorable court affirm the district court below. Thanks very much. What is clear is that the parties negotiated in their contract for this eventuality, meaning there's a supremacy clause and that allows the court to reconcile Parts 1 and Part 2 and give effect to the intent of the parties, which was clear. Suppose the cargo had been lost rather than never picked up. What law would you look to to determine general average adjustment, given what the parties had said? I'll say this, there's . . . the contract itself, if you look at it, it's got two provisions. So you can deal with general average under 19, or excuse me, under Clause 12, and that says New York. So you're dealing with . . . on that separate issue . . . What does that mean, that says New York? Translate that into English so that some of us who aren't used to shipping electrical transformers from point A to point B and entering into contracts with Andromeda would know. What does it mean? Just help me understand, in real terms, what you're talking about in Paragraph 22 and in Paragraph 19. It appears that the intent of the parties there was, in the event of a cargo loss, which again is not what we have here, they said, well, let's deal with that specific issue in New York. That's what they want. What do you mean? You mean it should be arbitrated in New York, or a London arbitrator is obliged to follow a New York law? Well, no, no. It just says it's going to be adjusted in New York, USA. That's what it says. What does that mean when you read that together with Paragraph 19? With Paragraph, I'm sorry, 12, General Average and New Jason Clause. General Average shall be adjusted, stated, and settled according to York Antwerp Rules 1994 or any subsequent modification. Proprietors of cargo to pay, if the general is to be adjusted in accordance with the law and practice of the United States, the following clause shall apply. And then it has a detailed statement of liability. It has an explication of governing principles of law for adjusting the value of the cargo, right? Correct. And that's the equivalent of what it is in New York, right? Or is that different from New York? I do not know the answer to that question, Your Honor. But this would be a legal provision. And it was whatever else it is and whatever else it means, it's arguably different from English law, right? Again, I do not know because English law could incorporate the same law that is provided there. Okay, so your answer to me and to your colleague is simply this. Maybe there would have been a conflict if it had been lost. But even that we can't tell because we don't know from this record the difference between English law, New York law, and general average. That's correct. That was never developed in the record below. That was not an issue. What we had here is the specific facts of this case, which is there was an issue of a breach of the charter party, that the goods, the transformer was not there when the ship was in Brazil ready to sail, which triggered not general average. It triggered Provision 25, Part 1. The other thing you might want to say is if you look at 25, it says arbitration, place of arbitration. And so what we're talking about narrowly here is the place of arbitration. Correct. We're not talking about what law eventually will apply. English or New York, but we are talking about place of arbitration. I don't know. Maybe that's one possible way to read the Part 1 alone consistently. And I would agree with that analysis given the facts of this case. Right. It's another way of saying there's no dispute about London. There only may be a dispute about the choice of law London was obliged to follow. Potentially. Correct. Let me ask you just this final question. Sure. Did they argue before the district court that Part 1 was internally inconsistent?  I do not believe that was raised. Thank you, Your Honor. Thank you very much. We would respectfully request the court reverse and order that arbitration take place in London. Thank you for your time here today. Thank you both.